Filed 5/17/21  P. v. Edwards CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075312 |
| v. | (Super.Ct.No. FSB14718) |
| ANTHONY ANNIVERSARY EDWARDS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ronald M. Christianson, Judge.  Affirmed.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers and Adrianne S. Denault, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

In 1998, defendant Anthony Anniversary Edwards was convicted of first degree murder (Pen. Code,[1] § 187, subd. (a)), a separate count of robbery (§ 211), and being an accessory (§ 32). The jury also found true a special circumstance allegation that the murder was committed in the course of a robbery (§ 190.2, subd. (a)(17)) and that defendant personally used a firearm (§ 12022.5, subd. (a)). He was sentenced to a term of life without possibility of parole plus a consecutive determinate term of 9 years (upper term of 5 years for the robbery, plus the midterm of 4 years for the gun use allegation from the murder count). On direct appeal, we affirmed the convictions but modified the sentence.

Following the enactment of Senate Bill No. 1437 (Senate Bill 1437) and section 1170.95, petitioner filed a postconviction petition for resentencing, which was denied without issuance of an order to show cause. Petitioner appeals. On appeal, petitioner argues the trial court erred by summarily denying his petition for resentencing without issuing an order to show cause. We affirm.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

2

We provide the background facts of the crime from our unpublished opinion in *People v. Edwards*, E022771, filed on December 17, 1999, with editing for brevity:

Richard Moore owned a gun shop and firing range in San Bernardino. On the evening of Monday, May 26, 1997, as Moore closed the shop, he washed all the glass display counters with soapy water.

The next morning, Dave Mortensen, the manager of the gun shop and shooting range, opened the store; the range and gun shop normally opened for business at approximately 9:00 a.m.

At 8:59 a.m. on May 27, Richard Hamer was driving past the gun shop. He saw two Black men standing in the open doorway of the business. One of the men was tall and thin, standing over six feet tall and weighing about two hundred pounds. The tall man had short-cropped hair. The second man was shorter than the first. Defendant is over six feet tall and weighs one hundred eighty pounds.[2]

John Bradford went to the shooting range at approximately 9:30 a.m. He noticed when he arrived that the internal security gate was open. When Bradford called out to Mortensen, no one answered. Bradford also noticed that papers and other items were strewn around the shop; this was very unusual. Bradford became alarmed and summoned help from a neighboring business.

---

[2] During his police interview, defendant implicated a person named "Nino" as the shooter and robber. However, "Nino" was described as approximately 6'2" and as being more muscular than defendant, or "buff." The witness's description of the taller suspect matched defendant, so the second suspect was not likely "Nino."

Mario Gomez, from the towing business next door, accompanied Bradford to the shooting range premises. Bradford turned on the monitors for the security cameras inside the business. Both Bradford and Gomez saw Mortensen's legs on the screen. Gomez called the police.

Mortensen had been shot four times; the four shots caused multiple entry and exit wounds. The pathologist testified at trial that Mortensen had suffered wounds to the arms, neck, and torso. He had been shot in the back of the head, and then shot in the head a second time as a "coup de grace."

Sixteen guns, one rifle, three thousand rounds of ammunition, money from the cash register, and Mortensen's wallet and car keys were missing.

Data recovered from the cash register tape showed that gun rental, ammunition, admission fees for two customers, and two training targets had been purchased at approximately 9:04 a.m. The sign-in sheets for May 27, 1997, were missing. Defendant's name was on a sign-in sheet for an earlier date, however.

Three days after the shooting, on May 30, 1997, a police officer stopped defendant for a traffic violation. The officer arrested defendant for his outstanding warrants. When officers searched the car defendant was driving when he was stopped, they found a loaded gun under the driver's seat. Ballistic evidence ultimately proved this gun was the murder weapon.

Forensic evidence at the crime scene linked defendant to the murder. Criminalists lifted numerous fingerprints and palm prints from the glass counter tops and other

4

locations in the shooting range. Defendant's palm print was on one of the paper targets, and defendant's palm prints and fingerprints were on the counter tops. At least nine prints were positively identified as defendants'.[3]

Shoe prints from at least two types of shoes had been tracked in blood at the scene. One pair of shoes had a Vibram sole, and the other had a dot pattern on the sole. Two persons had therefore participated in the robbery and murder. Defendant owned a pair of shoes with Vibram soles. The victim had some black, curly hair gripped in his hand at death. The hair matched defendant's hair.

After he was arrested for Mortensen's death, defendant agreed to talk to police. He at first denied any involvement in the killing, but later stated he had been at the shooting range with someone he identified only as "Nino." Defendant claimed he had gone simply to use the firing range; Nino shot Mortensen and then forced defendant to help remove property after Mortensen had been killed.

The People filed an amended felony complaint charging defendant with Mortensen's murder, alleging he had personally used a firearm in the commission of the offense, and with one count of second degree robbery. Defendant was held to answer on both charges.

The People filed an information in superior court charging defendant with murder and with robbery, and alleging that defendant had personally used a firearm in the

---

[3] Although Lorenzo Bailey, aka "Nino," aka Larry Dean Bailey, has a criminal record, none of the latent prints matched "Nino's."

commission of the murder. The People later amended the information to charge the special circumstance that the murder was committed in the course of a robbery. (§ 190.2, subd. (a)(17).)

Apparently at defendant's request, after the evidence had closed, the court instructed on an additional charge, that defendant was an accessory after the fact to the robbery and murder.

Twelve jurors and two alternates were sworn to try the charge. During trial, two jurors were excused and replaced by the alternates. When argument and deliberations began, one of the sitting jurors became ill. The parties discussed the possibility of proceeding to verdict with 11 jurors if the ill juror did not improve. Defendant personally stated on the record that he agreed to proceed with 11 jurors if the ill juror had to be excused. Shortly thereafter, the juror was excused for illness. Defendant, defense counsel, and the prosecutor all expressly agreed to waive their respective rights to a mistrial and to proceed with 11 jurors.

The jury found defendant guilty on all charged offenses, including the added accessory charge.[4] The jury also found the special circumstance allegation true, and

---

[4] This charge was added after defendant requested that the jury be instructed on aiding and abetting after the fact, during in limine proceedings. There, defense counsel argued that defendant did not realize the murder was going to happen and that he was surprised by the shooting, and that defendant intended to argue he was guilty of violating section 32 for failing to call the police. During his argument to the jury, the prosecutor declined to even discuss this theory because it was the People's position that defendant murdered and robbed the victim.

6

found true the allegation that defendant had personally used a firearm in the commission of the murder.

The court sentenced defendant to life without the possibility of parole (LWOP) for the special circumstance murder of Mortensen. The court also imposed the upper term of five years for the robbery plus the middle term of four years for the gun use enhancement. Defendant's total determinate term was thus nine years. The court stayed the middle term of two years for the accessory-after-the-fact conviction.

On March 15, 2019, defendant filed a petition for resentencing under section 1170.95. In the petition, defendant asserted he was convicted of first or second degree murder under the felony-murder or natural and probable consequences doctrine, that he could not now be convicted of first or second degree murder because of legislative changes to sections 188 and 189, and that he could not now be convicted of first degree felony murder because he was not the actual killer, and did not, with intent to kill, aid or abet the commission of first degree murder.

At the hearing on the resentencing petition, the parties agreed the trial court could consider the record on appeal along with our unpublished opinion in the direct appeal, *People v. Edwards, supra,* E022771. On July 1, 2020, the court denied the petition. Defendant appealed.

**DISCUSSION**

Defendant argues that the trial court erred in summarily denying his petition for resentencing under section 1170.95, without issuing an order to show case. He argues

7

because he checked the box on the form petition stating he "was not the actual killer," the court was required to accept this as true (notwithstanding the record of conviction to the contrary), and, in denying his petition, the court necessarily engaged in prohibited fact-finding. He asserts here, as he did at trial, that Nino was the killer and robber and that he only did what Nino told him to do. From this he argues he made a prima facie showing of entitlement to relief under section 1170.95. We disagree.

Senate Bill 1437, which became effective in January 2019, was enacted after the Legislature determined there was further "need for statutory changes to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1, subd. (b).) To accomplish this, it amended section 188 to require that, when the felony-murder rule does not apply, a principal in the crime of murder shall act with malice aforethought, and that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2; *In re R.G.* (2019) 35 Cal.App.5th 141, 144.)

Under this amendment, the natural and probable consequences doctrine can no longer be used to support a murder conviction. (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103 & fn. 9 [review granted Nov. 13, 2019, S258175]; Stats. 2018, ch. 1015, § 1(f).) However, this amendment did not alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily "know and share the murderous intent of the actual perpetrator." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118; see *People v. Chiu* (2014) 59 Cal.4th 155, 167 [a direct aider and abettor

8

"acts with the mens rea required for first degree murder"].)  One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law.

Senate Bill 1437 also amended section 189.  As amended, that section now limits first degree murder liability based on a felony-murder theory to a person who:  (1) was the actual killer; or (2) although not the actual killer, intended to kill and assisted the actual killer in the commission of first degree murder; or (3) was a major participant in the underlying felony who acted with reckless indifference to human life.  (§ 189, subd. (e).)  In so doing, Senate Bill 1437 ensures that murder liability is not imposed on a person who did not act with implied or express malice, was not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.  (*People v. Munoz* (2019) 39 Cal.App.5th 738, 749-750, review granted November 26, 2019, S258234.)

Nevertheless, under section 189, as amended, a defendant can be convicted of felony murder if he was the actual killer; acted as a direct aider and abettor with the intent to kill; or was a major participant in the underlying felony and acted with reckless indifference to human life.  (§ 189, subd. (e); *People v. Murillo* (2020) 54 Cal.App.5th 160 [review granted Nov. 18, 2020, S264978].)  The terms "major participant" and "reckless indifference to human life" as used in section 189, subdivision (e), thus have the same meaning in the context of first degree felony murder as they do in the context of

9

the felony-murder special circumstance (§ 190.2, subds. (a)(17) & (d)). (See *People v. Banks* (2015) 61 Cal.4th 788, 798-811; *People v. Clark* (2016) 63 Cal.4th 522, 611-623.)

Senate Bill 1437 also added section 1170.95, which permits a person convicted of murder under a felony-murder or natural and probable consequences theory to petition the court to have the murder conviction vacated and to be resentenced. (§ 1170.95, subds. (a) & (e).) Section 1170.95 requires that the petition be filed in the sentencing court, and must include the petitioner's declaration showing eligibility, the case number, the year of conviction, and any request for counsel. (§ 1170.95, subd. (b); *People v Verdugo* (2020) 44 Cal.App.5th 320, 327 (*Verdugo*) [review granted March 18, 2020, S260493].)

Section 1170.95, subdivision (a) provides that a person convicted of felony-murder or murder under a natural and probable consequences theory may petition the trial court to have his or her murder conviction vacated or be resentenced, asserting the petitioner could "'not be convicted of first or second degree murder because of changes to Section[s] 188 or 189' made by Senate Bill 1437. [Citation.]" (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135-1136 (*Lewis*) [review granted March 18, 2020, S260598].)

Subdivision (c) of section 1170.95 describes the next stage of the petition process: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the

10

petition and the petitioner may file and serve a reply within 30 days after the prosecutor['s] response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

In *Verdugo, supra,* the court interpreted this provision as providing for a multi-step process in evaluating a section 1170.95 petition. An initial review is conducted to determine the facial sufficiency of the petition. If the trial court determines a petitioner has made a prima facie showing of eligibility for relief, the court proceeds to the "second" inquiry into the prima facie showing under section 1170.95, subdivision (c). (*Verdugo, supra*, 44 Cal.App.5th at p. 330 [review granted March 18, 2020, S260493].)

In this second step, the trial considers whether the petitioner has made a prima facie showing of *entitlement* to (rather than eligibility for) relief. (*Verdugo, supra*, 44 Cal.App.5th at pp. 327–330, review granted March 18, 2020, S260493; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 897, citing *People v. Torres* (2020) 46 Cal.App.5th 1168, 1177–1178; *People v. Drayton* (2020) 47 Cal.App.5th 965, 975–976 (*Drayton*) ["§ 1170.95 provides for two separate prima facie reviews, with the first focused on eligibility for relief and the second on entitlement to relief."].)

At this level of evaluation, the trial court's authority to make factual determinations at the prima facie stage "'is limited to readily ascertainable facts from the record (such as the crime of conviction) . . . ' [Citation.]" (*People v. Duchine* (2021) 60 Cal.App.5th 798, 812.) Thus, "[i]f a defendant asserts he lacked the requisite intent or

11

did not act in a manner that would make him liable under still-valid murder theories, unless the record of conviction refutes those assertions *as a matter of law*, the defendant has met his prima facie burden." (*Id.* at p. 813, citing *Drayton, supra*, 47 Cal.App.5th at p. 980.)

In *Lewis*, the reviewing court held that in determining whether the petitioner has stated a prima facie basis for relief a trial court may consider the record of conviction, a question currently pending in the California Supreme Court. (*Lewis, supra,* 43 Cal.App.5th at p. 1137.) The *Lewis* court observed that in such petitions, a trial "court undertakes an "'initial screening'" of the petition to determine whether it states "'a prima facie basis for relief.'"" (*Lewis, supra,* at p. 1137, citing *People v. Washington* (2018) 23 Cal.App.5th 948, 953, 955 [noting that in evaluating the petition at that stage, the court is permitted to examine the petition "as well as the record of conviction."].) The parties in this case agreed that the trial court could consider the entire record on appeal as well as our opinion in the direct appeal, so that concern is not before us.[5]

In *Drayton,* the reviewing court considered the record of conviction, including the preliminary hearing transcript, comparing this second level of "prima facie eligibility review" as akin to the review conducted by courts in determining whether a petitioner in habeas corpus proceedings has made a prima facie showing of entitlement to an order to show cause. (*Drayton, supra,* 47 Cal.App.5th at pp. 977-978.) There, the court observed that if the record, including the court's own documents, "'contain[s] facts refuting the

<hr>

[5] We have taken judicial notice of the record on appeal in defendant's direct appeal, *People v. Edwards, supra,* E022771, pursuant to defendant's request.

12

allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.'" (*Drayton, supra,* 47 Cal.App.5th at p. 979, citing *In re Serrano* (1995) 10 Cal.4th 447, 456.)

However, in *Drayton*, the reviewing court reversed the denial of a petition because the trial court denied the petition after making credibility determinations where there were "no facts in the trial court record that, as a matter of law, refuted Drayton's assertion that he had been convicted of first degree murder on a theory of felony murder." (*Drayton, supra*, 47 Cal.App.5th at p. 981.)

Although defendant here argues that the trial court in the present case committed the same error as occurred in *Drayton*, the record does not support this assertion, because the facts in the trial record in this case do refute defendant's assertions.

First, the prosecution theory throughout the trial was that defendant was the shooter, as the People argued in opening statements.[6] The People introduced the opinion of the investigating detective that defendant was the shooter and the prosecutor reiterated that defendant was guilty as the shooter during summation to the jury. The primary theory presented by the prosecution was that the killing was premeditated murder based on the evidence of the two shots fired into the head. The jury verdicts and findings, that is, the record of conviction, reflect that the jury agreed defendant was the actual killer.

---

[6] On direct appeal, we concluded that defendant was the actual killer in addressing defendant's claims of instructional error. (*People v. Edwards, supra,* E022771, typed opn. p. 17.) We do not need to address that fact where enhancement finding for the personal use of the firearm, as part of the record of conviction, compels the same conclusion without engaging in an inquiry as to the sufficiency of evidence to support it.

13

A defendant who was convicted based on a record demonstrating that he was the actual killer is ineligible for resentencing under section 1170.95. (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 58 (*Cornelius*) [review granted March 18, 2020, S260410].) In *Cornelius,* the reviewing court concluded the jury implicitly found the defendant was the actual killer because it found he personally and intentionally used a firearm to commit the crime, rendering the statutory changes inapplicable to him. (*Ibid.*) A direct aider-abettor is also ineligible for resentencing under section 1170.95. (*Lewis, supra,* 43 Cal.App.5th at p. 1137; see also, § 189, subd. (e).)

Defendant's petition alleged he was convicted under the felony-murder doctrine but that he was not the actual killer, but the record of conviction refutes this assertion. Based on the record of conviction, the fact that there was a second person present for the robbery and murder does not establish a prima facie showing of entitlement to relief because the fact that another person may have participated does not mean defendant was not the shooter or that defendant lacked intent to kill. Indeed, it does not even mean that defendant was the aider abettor, as opposed to the unidentified coparticipant. The fact the jury convicted defendant of first degree murder while personally using a firearm shows the jury rejected defendant's theory and found he was the actual killer.

Nor does the fact the People argued felony murder as one of two theories of murder liability and that the court instructed on both theories prove that he was entitled to relief under Senate Bill 1437, because the finding of personal gun use in the commission

14

of the murder is inconsistent with a theory he was an aider and abettor convicted under the natural and probable consequences theory.

Defendant's arguments ignore his main obstacle. Had the jury adopted defendant's version of the incident and found defendant had aided and abetted a robbery under the natural and probable consequences theory, and was not the actual killer, it could not have made the true finding on the gun-use enhancement, which was an enhancement to the murder count. Even if the jury found he was an aider and abettor, the convictions and true findings show he was a direct aider-abettor, a major participant in the robbery and the murder, acting with reckless indifference to human life. (§ 189, subd. (e).)

Defendant argues the trial court was bound to accept the allegations of the petition as true. He infers that the defendant's theory at trial must be considered as a basis for relief. Yet, defendant himself acknowledges that the requirement that a court should "presume the petition's factual allegations are true" only applies "*unless the record contains facts refuting them as a matter of law*." (*Drayton, supra*, 47 Cal.App.5th at p. 980, italics added; see also *Verdugo, supra*, 44 Cal.App.5th at p. 328, review granted March 18, 2020, S260493, italics added.) Citing *Drayton,* he also acknowledges the superior court's authority to make credibility determinations without conducting an evidentiary hearing pursuant to section 1170.95, subdivision (d), is "limited to readily ascertainable facts from the record . . . ." (Ref. *Drayton, supra,* 47 Cal.App.5th at p. 980.)

15

That is what the trial court did in the present case, in summarizing "the readily ascertainable facts from the record" and considering our opinion from the direct appeal. The readily ascertainable facts from the record support the trial court's determination that defendant was ineligible for resentencing. This case is distinguishable from that in *Drayton*.

Here, the true finding that defendant personally used a firearm in the commission of the murder, and the fact defendant still had that loaded firearm in his possession three days later (contrary to his statement to the detective that he left the firearm he had been using at the shooting range on a table there), directly refutes the allegations of defendant's petition. There was other evidence at trial that supports the jury's verdicts and findings, as we addressed in our opinion on direct appeal, which undermines defendant's assertions. Because the record of conviction refuted the allegations of his petition, the court was not bound to accept them as true and was not required to issue an order to show cause.

The verdicts and the gun use finding, as well as the special circumstances finding, show the jury found defendant to be the actual killer, so that even after the amendments to sections 188 and 189, the conviction was valid. Thus, even "making all factual inferences in favor of the petitioner" (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329), the record of conviction demonstrates he is "indisputably ineligible for relief." (*Cornelius, supra*, 44 Cal.App.5th at p. 58.)

Defendant makes many and varied attacks on the trial court's ruling by arguing the evidence at trial that supported his position, omitting to address the unfavorable facts or evidence. We decline to address defendant's attempts to parse the record highlighting theories the jury rejected. Suffice it to say he did not meet his burden of demonstrating that the trial court made improper credibility findings when it determined that, even after the amendments to sections 188 and 189, "[defendant] could today be convicted as the actual killer." Because the record of conviction supports the trial court's determination defendant was the actual killer, and that he acted with intent to kill, defendant is not eligible for resentencing. If defendant wishes to collaterally challenge the murder conviction, gun use enhancement, or the special circumstances finding, he must do so by way of a petition for writ of habeas corpus. (*People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142, citing *People v. Gomez* (2020) 52 Cal.App.5th 1,17.)

The jury's determination that defendant personally used the firearm in the commission of the murder leaves little room to consider that defendant might have been convicted of murder under a natural and probable consequences theory: the gun use enhancement was alleged in connection with the murder count, so the jury's finding that defendant personally used the firearm must, *a fortiori*, relates to the commission of the murder, not to the commission of the robbery.

At a minimum, defendant was a major participant in the robbery and he fired the murder weapon that was found in his possession three days after the murder. But even under that theory, he was not entitled to an order to show cause evidentiary hearing

because the record of conviction refutes his allegations that he was convicted as an aider-abettor acting without intent to kill, or under the natural and probable consequences doctrine who could not be convicted of murder following the enactment of Senate Bill 1437.

The court did not err in denying the petition.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

McKINSTER

J.

RAPHAEL

J.

18